DONALD E. MILLER AND NORMA H. MILLER, APPELLEES, v. WESTWOOD HOMES, INC., A NEBRASKA CORPORATION, APPELLANT.

277 N. W. 2d 420

Filed April 10, 1979. No. 41956.

Robert C. Doyle of Walsh, Walentine & Miles, for appellant.

A. James McArthur, for appellees.

Heard before BOSLAUGH, McCOWN, CLINTON, and WHITE, JJ., and REIMER, District Judge.

BOSLAUGH, J.

This was an action for specific performance of a real estate contract involving the sale of 58 lots in Westridge Knolls, First Addition Replat in Ceresco, Nebraska, to the defendant. The trial court sustained the plaintiff's motion for summary judgment and ordered the defendant to perform. The defendant has appealed.

On August 25, 1975, the defendant purchased the lots from the plaintiffs for the purpose of construct-

ing residences upon them. The contract provided for a downpayment and the "closing" on lots on an installment basis as follows: "a. Buyer agrees to close on two (2) lots on or before April 1, 1976 or whenever lots are available for building but not later that (sic) July 1, 1976. Lots shall be deemed ready for building when water, electrical, paving and sanitary sewer connections, which have been approved by the Village of Ceresco, are available to such lots and available for hookup to the city system.

"b. Buyer shall close on three additional lots within sixty (60) days after closing on the first two (2) lots as set out in sub-paragraph (a) above. Buyer shall close on Five (5) additional lots within ninety (90) days after closing on the first two (2) lots as set out in sub-paragraph (a) above.

"c. That thereafter Buyer must close on at least five (5) additional lots per month, provided however, if Buyer closes on more than five (5) lots in any single month Buyer may be given credit at his option for such closing in excess of five made in any single month to apply toward this minimum requirement in any later month."

The contract further provided: "Buyer's obligation to close on any lots as herein provided shall be contingent and conditioned upon Seller's fulfillment of the following conditions: a. Immediately upon execution of this agreement Sellers shall undertake to install at their own expense the following improvements for each lot: Paving, water, which can be hooked up to the Village system, sanitary sewer, which can be hooked up for discharge to the Village sewer system, and electrical service. That all such installations shall be done in accordance with the law and with the approval of the Village of Ceresco, and the obtaining of all such permits, inspections or approval shall be solely the responsibility of the Sellers. Sellers further warrant that such installations shall be accepted by the Village of Ceresco by July 1,

1976. The cost of the engeneering (sic), installation, permits and inspections for the various improvements herein set out shall be borne solely by the Sellers. Said improvements shall be free of lien or assesment (sic)."

The plaintiffs completed the installation of water and sewer mains to serve the property but problems developed with respect to the capacity of the water and sewer facilities of Ceresco. On November 24, 1976, the plaintiffs and the defendant entered into a supplemental agreement which modified the agreement of August 25, 1975, "by extending the closing date on the lots commencing with ones to be closed on December 1, 1976 by 90 days from and after the date the Village grants to Westwood permits on any lots purchased by Westwood from Miller covered by the above contract, *said extension, however, not to extend beyond March 1, 1977 in any event.*" (Emphasis supplied.)

This action was commenced on May 9, 1977. The defendant's answer alleged that the village of Ceresco had failed and refused to grant permits for the construction of houses on the property not yet closed upon as described in plaintiffs' petition until such time as the village's new water system was completely in operation.

After the plaintiffs' motion for summary judgment had been filed, the defendant obtained leave to take the deposition of the chairman of the village board. The chairman testified that the village water system was not adequate; that the village board had determined not to grant any further building permits or permit new connections to the village water system; and on three occasions requests for building permits by the defendant had been refused. The defendant had been granted building permits since that time but the water problem still existed.

The record indicates the motion for summary judgment was heard on November 18, 1977. On No-

vember 22, 1977, the defendant asked leave to file an amended answer alleging that prior to execution of the purchase agreement the plaintiffs knew or had reason to know that the village had asserted or would assert there were sewer and water problems which would or could prevent the defendant from obtaining sewer and water connections; that the plaintiffs had a duty to disclose these facts to the defendant and failed to do so; and that defendant's plan to construct houses upon the lots to be purchased from the plaintiffs was frustrated by the failure of the village to issue building, water, and sewer construction permits. The record is not clear but, apparently, leave to file the amended answer was refused.

The controlling issue in the case is the interpretation of the contract between the parties. The original agreement was conditioned upon there being water and sewer service to the property. We think this meant water and sewer service that could be used by the purchasers of the lots and not merely the installation of mains that could not be used because the facilities of the village were inadequate to permit new residential connections.

However, the supplemental agreement of November 24, 1976, which was entered into after the problem of inadequate facilities had fully developed and was known to both parties, provided that the extension on closing granted the defendant should not "extend beyond March 1, 1977 in any event." Whatever right the defendant may have had under the original agreement to delay closing was waived by the supplemental agreement which required closing after March 1, 1977.

A motion for leave to file an amended answer, particularly after the matter has been submitted, is addressed to the sound discretion of the trial court. McCarty v. Morrow, 173 Neb. 643, 114 N. W. 2d 512. The record here does not show an abuse of discretion.

There was no genuine issue of material fact and

the plaintiffs were entitled to judgment. The judgment of the District Court is affirmed.

AFFIRMED.